UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ACKER MERRALL & CONDIT CO.<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL INSURANCE COMPANY<br><br>Defendant. | Case No.  _____<br><br>Judge:  _____<br><br>**COMPLAINT**<br><br>**Jury Demand Endorsed Hereon** |

Plaintiff, Acker Merrall & Condit Co., a New York corporation, on its own behalf and on behalf of all insureds ("Acker Wines" or "Plaintiff") under the "Crime Coverage Part" of the "Forefront Portfolio 3.0" insurance policy (as defined below), by way of their Complaint against Defendant Federal Insurance Company ("Chubb") state:

**INTRODUCTION**

1. This is an action for: (a) declaratory judgment under 28 U.S.C. § 2201, et seq., for a declaration of rights regarding insurance coverage for losses as a result of a computer fraud crime incident against Acker Wines; (b) compensatory damages for breach of contract; and (c) consequential damages for breach of contract and the duty of good faith and fair dealing.

2. In this action, Acker Wines seeks to have the Court construe the meaning of and enforce the insurance protection for a "Computer Fraud Coverage" loss under a Chubb "Forefront Portfolio" policy sold by Chubb to Acker Wines, which contains protection against crime losses, including insurance coverage for theft of money as a result of Computer Violations. Acker Wines' insurance claim was submitted to Chubb under the Crime Coverage Part, Policy

Number: 8263-6609, for the insurance policy period incepting November 2, 2022 (the "Computer Fraud Coverage"). A true and correct copy of the "Crime Coverage Part" promising Computer Fraud Coverage that was delivered to Acker Wines is set forth as Exhibit A.

3. Acker Wines seeks a declaration that the terms of the Computer Fraud Coverage obligate Chubb to cover Acker Wines for the losses it has suffered and will suffer which result from a computer fraud incident.

4. Acker Wines seeks to enforce the Computer Fraud Coverage with respect to the maximum amount of insurance coverage provided by Chubb to Acker Wines.

5. The Computer Fraud Coverage requires Chubb to pay the full costs of the losses resulting from the computer fraud incident.

6. Despite this insurance coverage obligation, Chubb has refused to cover Acker Wines, and has attempted to evade and nullify its obligations and duties to Acker Wines by interposing specious defenses, asserting improper insurance policy "interpretations," and forcing Acker Wines into litigation to enforce its rights under the Computer Fraud Coverage for which Acker Wines has paid substantial premiums.

7. Acker Wines has complied with all applicable conditions or other requirements of the Computer Fraud Coverage, including, without limitation, the notice and sworn proof of its losses provisions of the Computer Fraud Coverage. Furthermore, Acker Wines attempted on two separate occasions, starting in July 2023, to engage in a non-binding mediation with Chubb over this insurance dispute which Chubb failed to convene, engage in, or schedule. On yet another occasion in September 2023, Acker Wines attempted to engage in a claim settlement negotiation with Chubb which was wholly unsuccessful.

8. Acker Wines is entitled to all benefits provided by the Computer Fraud Coverage.

9. Acker Wines is entitled to have the Computer Fraud Coverage interpreted in a reasonable manner that fulfills the promises of insurance protection by Chubb.

10. Accordingly, Acker Wines seeks to have this Court construe the meaning of, and enforce the provisions of, the Computer Fraud Coverage.

### B. THE PARTIES

#### (i) The Plaintiff

11. Acker Wines is an organization duly organized and existing under the laws of the State of New York, with its principal place of operations at West 72nd Street, New York, NY 10023.

12. At all relevant times, Acker Wines was and is engaged in, among other things, the business of fine wine auction and retail.  It is a part of the branded business of "Acker Merrall & Condit" ("Acker"), a worldwide recognized leader in fine wine auction and expert wine services, with offices in, among other places, Hong Kong (through Acker Merrall & Condit (Asia) Limited).

#### (ii) The Defendant

13. Upon information and belief, Federal Insurance Company ("Chubb") is a corporation duly organized and existing under the laws of the State of Indiana, with its principal place of business located in Warren, New Jersey.

14. Upon information and belief, Chubb, at all relevant times herein was engaged in, among other things, the business of selling, among other things, commercial crime insurance, including insurance coverage marketed, sold, and advertised to protect its policyholders from losses resulting from computer fraud.

15. Chubb is licensed to conduct the business of insurance in New York. Chubb sold to Acker Wines in New York the Computer Fraud Coverage, with a policy period inception date of November 2, 2022.

16. The policy period continued on and covered Acker Wines up through, and including, the computer fraud incident suffered by Acker Wines and the resulting losses therefrom.

17. Upon information and belief, Chubb's claims handling agents, Chubb & Son, are a "division of" Chubb.

### C. JURISDICTION AND VENUE

18. The jurisdiction of this Court is invoked pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, et seq., to determine questions of actual controversy between the parties to this action as more fully set forth herein. An actual controversy exists between the parties for which a declaratory judgment is needed setting forth the parties' rights and obligations under the subject Computer Fraud Coverage. Plaintiffs have no adequate remedy at law with regard to said controversies.

19. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties as Acker Wines is organized under the laws of New York and has its principal place of business in New York, NY. Defendant Chubb is domiciled under the laws of Indiana and has its principal place of business in New Jersey, and the amount in controversy well exceeds the sum or value of $75,000. Personal jurisdiction is established because defendant Chubb and its agents:

    (a)    have transacted business in New York;

    (b)    have contracted to supply services or goods in New York;

(c) have contracted to insure persons, property and risks located within New York at the time of contracting;

(d) have solicited, procured, effected, and sold insurance in New York;

(e) have made, issued, and delivered contracts of insurance in New York; and

(f) have collected and received insurance premiums and other consideration for insurance in and from New York.

20. Venue of this action in is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims of Acker Wines occurred in New York County, including Defendant's insurance sales, underwriting, imposition of a New York amendatory endorsement clause, insurance policy delivery, communications, and claims handling, and Defendant's insurance denials were directed to Acker Wines in New York County. Venue is also proper because Chubb transacted business in New York County.

21. Acker Wines has paid all licenses and fees which are due and owing by it to the State of New York.

### D.  THE COMPUTER FRAUD HACKING INCIDENT

22. On or around March 28, 2023, Acker Wines became aware of suspicious activity involving three wire transfers from its Hong Kong office.

23. Upon becoming aware of the issue, Acker Wines promptly began a forensic investigation to determine the scope and nature of the potential data security event. Acker Wines also reported the matter to the Hong Kong police and FBI in the U.S.

24. Acker Wines' preliminary investigation determined that one of its employees in its Acker Wines' Asia entity had her computer hacked.

25. It was also discovered that one of Acker Wines' client contacts also had a computer hack as well.

26. Upon information and belief, the cyber thief who hacked into Acker Wines computer system accessed the employee's communications system for email to steal money from Acker Wines.

27. Once insider Acker Wines' computer system, the computer hacker was able to commit computer fraud by arranging three wire transfers out from the Hong Kong office to accounts controlled by the hacker.

28. These wire transfers totaled approximately $1,456,636.

29. The first wire transfer occurred on March 23, 2023, was for $2,594,423 HKD (roughly $330,489.28 USD), and was sent to ICBC Bank.

30. A second wire transfer occurred March 27, 2023 and was for $7,012,185 HKD (roughly $893,278.84 USD) and was sent to HSBC Bank.

31. A third wire transfer occurred on March 28, 2023 and was for $1,828,003.80 HKD (roughly $232,868.49 USD) and was sent to Dah Sing Bank.

32. Acker Wines did not know about the computer hack nor consent to the taking of the money by the cybercriminal.

33. Shortly after discovery of the theft of funds through the computer fraud of the unknown third-party, Acker Wines retained the firm of Mullen Coughlin, LLC and cyber security forensic specialists to assist in its forensic investigation of the hack and resulting theft.

34. Chubb was timely notified of the Computer Fraud Incident.

35. On or about April 5, 2023, Acker Wines provided to Chubb information concerning the hacking of its systems and the theft.

36. On or about May 19, 2023, Acker Wines sent to Chubb and its claims handling agents Acker Wines' sworn proof of its losses, which contained an itemization of losses,

providing, among other things, a description of the loss details, dates, individuals and a host of back-up information concerning the computer fraud incident.

37. On or about June 9, 2023, Chubb took the position that coverage was available for the theft of money by the cybercriminal under a sub-limited rider clause entitled "SOCIAL ENGINEERING FRAUD COVERAGE ENDORSEMENT" providing $100,000 of coverage.

38. Curiously, however, when Chubb stated it was covering Acker Wines' insurance claim under the "SOCIAL ENGINEERING FRAUD COVERAGE ENDORSEMENT", Chubb failed to address insurance coverage under the larger grant of protection provided by the Computer Fraud Coverage insuring clause (or any other provision of the crime policy for that matter).

39. Furthermore, Chubb never promptly paid to Acker Wines the coverage limit that Chubb represented was owing under the "SOCIAL ENGINEERING FRAUD COVERAGE ENDORSEMENT." It was not until mid-November 2023 that Chubb sent payment to Acker Wines of the sub-limited amount and then improperly labeled the payment as a "Full & Final Settlement" of the insurance claim. Chubb pursued this claims handling tactic despite knowing that Acker Wines believed the Computer Fraud Coverage (along with its substantially greater insurance policy limits) to have been triggered and owing by Chubb.

40. The loss suffered by Acker Wines is covered by the Computer Fraud Coverage insuring agreement that promises $2 million of protection for Acker Wines.

41. The loss suffered exceeds the applicable deductible and is not excluded under the crime insurance policy sold by Chubb to Acker Wines.

42. Acker Wines has been attempting diligently, including by instituting legal proceedings in Hong Kong, to also recover money from multiple banks in Hong Kong and China

where the stolen funds may have been deposited and subsequently transferred by the computer hacker. To date Acker Wines has recovered approximately $200,000 after incurring more than $49,500 in legal costs and expenses to recover to date.

### E. CHUBB'S COMPUTER FRAUD COVERAGE

43. Acker Wines purchased the Computer Fraud Coverage from Chubb to provide comprehensive protection against losses resulting from, among other things, computer hacking.

44. Under the Computer Fraud Coverage, Acker Wines was promised protection from losses resulting from "unauthorized entry into" "a Computer System".

45. Specifically, the crime insurance policy sold to Acker Wines promises:

**Insuring Clause (E): Computer Fraud Coverage**

(E)   The Company shall pay the Parent Organization for direct loss of Money, Securities or Property sustained by an Insured resulting from Computer Fraud committed by a Third Party.

46. Chubb defines "Computer Fraud" as follows:

Computer Fraud means the unlawful taking of Money, Securities or Property resulting from a Computer Violation.

47. In turn, "Computer Violation" is defined as follows:

Computer Violation means an unauthorized:

(A) entry into or deletion of Data from a Computer System;

(B) change to Data elements or program logic of a Computer System, which is kept in machine readable format; or

(C) introduction of instructions, programmatic or otherwise, which propagate themselves through a Computer System,

directed solely against an Organization.

48. Under the crime insurance policy, "Computer System" is defined as follows:

>Computer System means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are:
>
>(a) owned and operated by an Organization;
>
>(b) leased and operated by an Organization; or
>
>(c) utilized by an Organization.

49. The intrusion into Acker Wines's computer system by the cybercriminal undeniably qualifies as a "Computer Violation" under the crime insurance policy's terms.

50. As a corollary, there was an "unlawful taking of money" from Acker Wines "resulting from a Computer Violation".

51. As such, the loss caused by the cybercriminal is a covered insurance claim for Computer Fraud Coverage up to the policy limit of $2,000,000.

52. Furthermore, the cyber criminal's unauthorized entry into the email inbox of Acker Wines' employee in Hong Kong to unlawfully take money is also covered because Chubb defines "Computer System" to include "input, output, processing" and "communication facilities", among other things.

53. Nevertheless, Chubb has denied coverage under the Computer Fraud Coverage part for Acker Wines' loss of over $1.4 million.

54. Acker Wines now has been forced to sue for insurance coverage under the Computer Fraud Coverage.

55. Acker Wines paid substantial premiums for the Computer Fraud Coverage and has complied with all applicable conditions precedent under the Computer Fraud Coverage.

56. Acker Wines' losses claimed against Chubb directly result from the computer fraud incident and are covered under the express terms of the Computer Fraud Coverage.

57. It was the intent and reasonable expectation of Acker Wines in purchasing insurance coverage from Chubb that Acker Wines would be protected by insurance coverage for the types of risk of loss attendant in the computer fraud incident.

58. While Chubb has admitted that the insurance claim is covered at least in part, it is important to note that Chubb's crime policy provides under section VII.(B) that: "If a direct loss is covered under more than one Insuring Clause, the maximum amount payable under this Coverage Part shall not exceed the largest applicable Limit of Liability of any such Insuring Clause."

59. Thus, Chubb's crime insurance policy expressly promises that where two or more different insuring agreements cover the loss, the higher limit applies.

    F.    **CHUBB'S CLAIMS HANDLING CONDUCT**

60. Chubb has failed to honor and, instead, has repudiated its obligations under the Computer Fraud Coverage.

61. Instead of acknowledging Computer Fraud Coverage with policy protection of up to $2,000,000 under the crime insurance policy, Chubb has instead sought to improperly apply the smallest limit of coverage possible for Acker Wines' hacking loss—a sub-limited "social engineering coverage" of $100,000 under an endorsement to the policy.

62. Even if Chubb's position is that the endorsement's coverage was triggered, that does not permit it to limit its payment obligation to the least amount of coverage where another insuring clause provides higher limits of protection to Acker Wines.

63. Under section VII.(B) of the crime policy, Chubb promises that the highest limit of coverage applies—not the lowest: "If a direct loss is covered under more than one

Insuring Clause, the maximum amount payable under this Coverage Part shall not exceed the largest applicable Limit of Liability of any such Insuring Clause."

64. The Computer Fraud Coverage plainly applies to losses caused by computer hacking. Computer hacking qualifies as a "Computer Violation" by means of "an unauthorized entry into . . . a Computer System" under the express provisions of the Chubb insurance policy, which Chubb drafted.

65. Here, Acker Wines' loss of money resulted from and was proximately caused by the cyber thief hacking into its "Computer System" to unlawfully take money by hacking and hijacking an employee's "Computer System."

66. Chubb initially failed in its claim correspondence to address Acker Wines' coverage under the Computer Fraud Coverage insuring agreement.

67. When Acker Wines followed up for an explanation from Chubb, Chubb misrepresented to Acker Wines the scope of insurance coverage under the Computer Fraud Coverage.

68. Specifically, on June 20, 2023, Chubb represented that Computer Fraud Coverage was limited to certain instances, stating to Acker Wines that: "Computer Fraud applies when a fraudster breaches the computer system of the Insured and transfers funds without the Insured's knowledge or consent." *See* Exhibit B attached hereto which contains a true and correct copy of the correspondence received from Chubb's claims handler.

69. Even if such an interpretation of the Computer Fraud Coverage was accurate, Acker Wines' insurance claim qualifies for Computer Fraud Coverage under such an interpretation.

70. There is no question that Acker Wines computer system was "breached" or "hacked." Further, Acker Wines is aware of no evidence that it or its employees knew they were hacked, much less consented, when the funds were unlawfully taken from them by a cybercriminal.

71. Just as importantly, Chubb's June 20, 2023 statement about the Computer Fraud Coverage insuring agreement is a misrepresentation of coverage.

72. The Computer Fraud Coverage insuring provision Chubb itself drafted is devoid of any conditions bearing on the Insured's knowledge or consent.

73. Chubb has failed to inform Acker Wines of all possible bases of insurance coverage under the Computer Fraud Coverage and has taken a claims position that renders the Computer Fraud Coverage ambiguous.

74. Furthermore, Chubb improperly interprets the crime policy to make illusory the coverage of the Computer Fraud Coverage for among other things, hacking losses, and apply a drastically limited amount of coverage under the artifice of a separate insuring clause.

75. Upon information and belief, Chubb engages in an improper pattern and practice of contesting cyber-related insurance claims, including Computer Fraud loss claims.

76. Chubb has breached: (a) the obligations set forth in the Computer Fraud Coverage, and (b) the duties of good faith and fair dealing that Chubb owes to Acker Wines. These breaches have caused damage to Acker Wines.

77. Chubb has breached its fiduciary duties to Acker Wines. This breach includes, but is not limited to, Chubb forcing Acker Wines to bring this action to enforce the insurance coverage that is rightfully owed to Acker Wines.

78. The economic incentives for Chubb to disregard its continuing obligations to act in good faith and fair dealing toward its policyholders regarding large-dollar claims include:

(a) The cumulative interest earned on the policyholders' premiums and reserves during the periods of dispute;

(b) The discounts extracted from policyholders in the compromise and settlement of almost all of the claims that policyholders pursue;

(c) The cumulative value of claims abandoned by policyholders when policyholders accept Chubb's erroneous disclaimers or lose the will or ability to legally contest Chubb's claims conduct; and

(d) Lower reinsurance premiums and better relations with its reinsurers.

**FIRST CAUSE OF ACTION**
**FOR DECLARATORY JUDGMENT**

79. Plaintiff repeats and realleges the allegations of paragraphs 1 through 78 as if set forth herein.

80. As a direct result of the Computer fraud Incident, Acker Wines has incurred, and will continue to incur losses and expenses covered under the Computer Fraud Coverage.

81. Chubb has breached its obligations as set forth in the Computer Fraud Coverage which it sold to Acker Wines, by failing to honor or by disputing its obligations to cover the loss suffered by Acker Wines.

82. Acker Wines is entitled to a declaration by this Court of its rights and the obligations of Chubb under the Computer Fraud Coverage with respect to the losses suffered by Acker Wines as a result of the computer fraud incident.

83. By reason of the foregoing, an actual and justiciable controversy exists between Plaintiff and Defendant regarding Chubb's obligations to cover the subject insurance claim.

84. Acker Wines thus seeks, under the Declaratory Judgment Act, 28 U.S.C. §2201, a judicial determination by this Court of Chubb's obligations to cover Acker Wines for amounts it has lost as a direct result of the computer fraud incident. Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

85. Acker Wines seeks its reasonable attorneys' fees in connection with the relief sought herein.

## SECOND CAUSE OF ACTION
## FOR BREACH OF CONTRACT

86. Acker Wines repeats and realleges the allegations of paragraphs 1 through 85 as if set forth herein.

87. The Computer Fraud Coverage constitutes a valid contract of insurance coverage between Acker Wines and Chubb.

88. Acker Wines has complied with all terms, conditions, or prerequisites set forth in the Computer Fraud Coverage, or has been excused from compliance with such terms, conditions, or prerequisites as a result of Chubb's breach and/or other conduct.

89. Acker Wines has incurred a theft loss, and likely will incur in the future, losses and expenses because of the computer fraud incident.

90. In breach of the Computer Fraud Coverage, Chubb has failed or refused to accept its obligation to provide Acker Wines with coverage for these losses.

91. The hacking loss suffered by Acker Wines is covered by the Computer Fraud Coverage insuring agreement it purchased from Chubb.

92. As a result of this breach, Chubb is liable to Acker Wines for damages relating to the losses and costs suffered by Acker Wines as a result of the computer hacking theft, which

presently is well in excess of the amount of the applicable deductible. The exact amount of damages sought by Acker Wines will be shown at trial, but shall not be less than $1,456,636.

93. Chubb also is liable for all other losses that Acker Wines may suffer in the future as a result of the computer hacking theft, including consequential damages, together with the costs and disbursements of this action, including, but not limited to, reasonable attorneys' fees and pre-judgment and post-judgment interest.

94. The Policy contains an implied promise that Chubb would deal fairly and in good faith with Acker Wines and would do nothing to injure, frustrate, or interfere with Acker Wines' rights to receive the benefits of the Policy.

95. The covenant of good faith and fair dealing obligates Chubb to refrain from taking any action which would deprive Acker Wines of the benefits of the contract, to cause undue hardship or harm to Acker Wines, and through its unreasonable, malicious, reckless, or intentional failure and refusal to pay the subject insurance claim.

96. Chubb has breached its duty of good faith and fair dealing by engaging in conduct calculated to further Chubb's own economic interests at the expense of its policyholder, Acker Wines.

97. The New York Court of Appeals has established that New York law prohibits insurance companies from: improperly denying insurance coverage, in whole or in part; and delaying the payment of covered claims. Under New York law, an insurance company that improperly refuses to honor its insurance coverage obligations, in whole or in part, is liable for consequential damages.

98. Consequential damages, under New York law, can include among other things an award of the policyholder's attorney fees and legal costs incurred to enforce its insurance coverage rights against the breaching insurance company.

99. Chubb has breached its duty of good faith and fair dealing by, among other things:

(a) Unreasonably, inadequately and improperly investigating Acker Wines' claims and request for insurance coverage, including the failure to apply the Computer Fraud Coverage under its own interpretation provided in the June 20, 2023 claims correspondence;

(b) Committing unfair and deceptive acts and practices in the handling of Acker Wines' claims concerning the computer hacking theft, including the misrepresentation of the terms of the Computer Fraud Coverage insuring grant that Chubb itself drafted;

(c) Failing and refusing to pay Acker Wines' claim for coverage promptly and failing to pay its Computer Fraud Coverage claim without a reasonable basis and with the knowledge or reckless disregard of its lack of reasonable basis, including the deliberate misrepresentation of the grounds for delaying payment for the computer hacking theft loss when Acker Wines clearly sought a claim payment substantially larger than the $100,000 sublimit that Chubb sought to apply in June 2023;

(d) Compelling Acker Wines to institute this action in order to gain the full benefits of the crime policy purchased by Acker Wines;

(e) Placing its own pecuniary interest in saving money on Acker Wines' insurance claim ahead of Acker Wines' interest and contractual right to receive the maximum benefits under the Policy for which Acker Wines paid substantial premiums;

(f) Failing to pay any amount of the losses suffered by Acker Wines within a reasonably prompt time after Chubb learned of the computer hacking theft that was clearly well in excess of the applicable retention/deductible and when Chubb did belatedly pay $100,000 to Acker Wines, it attempted to do so by improperly seeking to get Acker Wines to compromise its Computer Fraud Coverage claim as part of its tactic to extract a "Full & Final Settlement" of the insurance claim by paying a fraction of the loss amount.

  (g) Upon information and belief, ignoring their own ethical standards and claims-handling procedures, which require that a claims-handler discover and disclose all bases for finding – not avoiding – insurance coverage, and to resolve claims fairly and quickly to avoid resulting damage to a policyholder's business.

100. Chubb's wrongful acts caused damages to Acker Wines including, but not limited to, the loss and expenses Acker Wines has suffered and will suffer that are otherwise covered under the Policy, as well as attorneys' fees and expenses in litigating against Chubb's attempts to improperly minimize its coverage payout for the insurance claim.

101. Chubb has acted toward Acker Wines with conscious disregard of Acker Wines' rights, and with the intent to vex, injure and annoy Acker Wines so as to constitute oppression, fraud, or malice, further justifying consequential damages.

102. In addition, Acker Wines is suffering consequential damages due to Chubb's wrongful, unjustified and inappropriate delay, failure to make payments for the computer hacking theft, and imposition of unwarranted assertion of coverage defenses, such as the "Fraudulent Instructions Exclusion" found at Endorsement No. 8 of the crime policy.

103. Chubb's wrongful conduct and breach of the crime policy diverted Acker Wines from its business by reducing the amount of cash it could apply toward its ongoing business in the wine auction and retail trade, inventory, and consignment opportunities.

104. More specifically, the hacking theft of money from Acker Wines had the obvious effect of diminishing its cash flow. Chubb's wrongful refusal to promptly pay the Computer Fraud Coverage owed to Acker Wines meant that it lacked the required cash flow it would normally and otherwise have to purchase inventory.

105. As a consequence of Chubb's refusal to honor its coverage obligations in full and in a prompt manner, Acker Wines was forced to buy materially less inventory from June 1, 2023 to September 1, 2023.

106. This interruption in adding inventory has resulted in, and will continue to result in, depressed revenues.

107. It was within the contemplation of the parties to the crime insurance generally, and the Computer Fraud Coverage specifically, that should Chubb refuse to timely pay a covered insurance claim in full, it would harm Acker Wines and result in additional damages as a consequence because Acker Wines would be without the same amount of operating capital to continue normal business operations.

108. Upon information and belief, Chubb knew at the time it sold insurance protection to Acker Wines that a wrongful refusal to pay a covered claim in full and in a prompt manner could harm a business such as Acker Wines.

109. As a consequence, Acker Wines has not enjoyed the peace of mind that it expected to receive in return for its payment of premiums, or the comfort of knowing that it promptly would be compensated for its losses pursuant to the Computer Fraud Coverage of the crime insurance part sold by Chubb to Acker Wines.

110. The consequential damages Acker Wines is suffering and will continue to suffer, including additional costs of securing its promised coverage, borrowing from commercial lenders and needing additional infusions of money from creditors, were within the contemplation of the parties herein, at the time the crime policy was sold by Chubb, as natural probable results of a breach of contract and were intended to be avoided and prevented by timely payment of the coverage owed under the Computer Fraud Coverage part of the crime policy.

111. Chubb, having been an institutional litigant in courts around the country including in this Circuit, knows that policyholders must engage in the litigation process, hire counsel and incur substantial costs to match the formidable resources of Chubb where covered

claims are denied or paid only in part.  Chubb undoubtedly knows that as a natural probable result of a breach of the Policy that Acker Wines would be compelled to incur litigation fees and costs to enforce its insurance coverage rights for a claim that is covered under the terms of the Policy.

112. It is also within the contemplation of the parties before the Policy was sold that a business the size of Acker Wines would experience cash-flow and other hardships as a result of Chubb's refusal to pay a serious hacking insurance claim exceeding $1 million.  While such claim amounts may not be large to Chubb, they are significant for policyholders the size of Acker Wines.

113. The consequences of an improper failure to pay a covered claim were within Chubb's contemplation before it sold the policy because Chubb represents that it protects against modern and serious risk exposures:

> The pace of innovation continues to rise rapidly, bringing with it new ways for criminals to exploit companies with even the best internal controls. The Chubb Primary Commercial Crime Insurance policy helps protect companies against theft by employees and outside bad actors, including hackers and imposters[.]

114. Acker Wines accordingly requests entry of judgment against Chubb for breach of contract, including for breach of the covenant of good faith and fair dealing and awarding the payment of damages in an amount equal to the amount owed under the Policy, consequential damages, attorneys' fees and costs, each in amounts to be proven at trial, together with such further relief set forth below.

WHEREFORE, Acker Wines requests judgment as follows:

1. With respect to the First Cause of Action:

Declaring that, pursuant to the terms of the Policy, which Chubb sold to Acker Wines, Chubb is obligated to provide Computer Fraud Coverage for the losses incurred by Acker Wines resulting from the computer hacking theft and awarding reasonable attorneys' fees for the prosecution of this action;

2. With respect to the Second Cause of Action:

(a) Awarding money damages, consequential damages, pre-judgment and post-judgment interest;

(b) Requiring Chubb to (i) adjust and pay promptly the losses of Acker Wines as a result of the Computer hacking theft; and to (ii) cover Acker Wines for all losses Acker Wines has incurred or will incur in connection with the computer hacking theft, pursuant to the Policy;

(c) Enjoining Chubb from failing and refusing:

    (i) To handle and adjust properly the insurance claim filed by Acker Wines; and

    (ii) To indemnify Acker Wines for all sums Acker Wines may need to pay or will in the future become obligated to pay in connection with the computer hacking theft;

(d) For consequential damages, including for attorneys' fees and costs of suit;

(e) For attorneys' fees; and

(f) For such other and further relief as the Court may deem just and proper.

3. With respect to all Causes of Action,

For reasonable attorney fees and the costs and disbursements of this action.

## JURY TRIAL DEMAND

Acker Wines hereby requests a trial by jury as to all Counts so triable.

Dated:   December 4, 2023
         New York, New York

ANDERSON KILL P.C.

/s/ *Joshua Gold*
Joshua Gold
John M. Leonard
1251 Avenue of the Americas
New York, NY 10020-1182
(212) 278-1000
*Attorneys for Plaintiff*
*Acker Merrall & Condit Co. Inc.*